

# Missouri Court of Appeals
## Southern District

### In Division

In the Interest of K.G.K and A.R.K.,   )
    )
MISSOURI DEPARTMENT OF SOCIAL   )
SERVICES, CHILDREN'S DIVISION,   )
    )
    Respondent,   )
    )   Nos. SD38474 and SD38654
   v.   )   Consolidated
    )   **Filed:  March 20, 2025**
S.J.K.,   )
    )
    Appellant.   )

### APPEAL FROM THE CIRCUIT COURT OF WAYNE COUNTY

Honorable Scott J. Schrum, Judge

**<u>AFFIRMED</u>**

S.J.K. ("Father") appeals from a judgment terminating his parental rights to K.G.K. ("Child") and from a judgment denying Father's Rule 74.06(b)[1] motion for relief from the termination judgment.  He raises seven claims of error:  two related to a Children's Division social study, three related to findings of grounds for termination, a challenge to the finding that termination of Father's parental rights was in Child's best interest, and a challenge to the denial of

---

[1] Rule references are to Missouri Court Rules (2024) unless otherwise indicated.

Father's attorney's request to continue the termination trial.[2]  Finding no error, we affirm.

## Background[3]

Father has a significant criminal history, including drug-related offenses, dating back to 2007.  From May to August of 2019, Child was under the jurisdiction of the juvenile court due to Father's drug use and filthy home conditions, among other reasons.  In March of 2021, two-year-old Child and his one-year-old half-sister A.R.K.[4] (the "Children") were taken into the juvenile court's jurisdiction due to child neglect.  The Children and their home were filthy, a person was found passed out in a car at the home and in possession of methamphetamine, and Father, the Children's caretaker at the time, had been "asleep" and lost track of Child's one-year-old half-sister.  The Children tested positive for exposure to methamphetamine and cannabinoids.  Father was arrested on outstanding warrants.

While Child was in care, Father struggled to stay employed, pay rent, and stay sober.  He

---

[2] Respondent did not file a brief.  "While there is no penalty for that omission, we must adjudicate [Father's] claim of error without the benefit of whatever argument, if any, Respondent could have made in response to it."  *Int. of P.T.M.*, 662 S.W.3d 852, 854 n.3 (Mo.App. S.D. 2023) (quoting *Scates v. State, Dept. of Soc. Servs., Div. of Child Support Enf't*, 978 S.W.2d 793, 793 n.1 (Mo.App. S.D. 1998)).

[3] Father's points relied on include challenges under the against-the-weight-of-evidence standard, misapplication of law, and abuse of discretion.  "[T]he circuit court is free to disbelieve any, all, or none of the evidence, and it is not the reviewing appellate court's role to re-evaluate the evidence through its own perspective."  *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 627 (Mo. banc 2014).  "When reviewing the record in an against-the-weight-of-the-evidence challenge, this Court defers to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations."  *S.S.S. v. C.V.S.*, 529 S.W.3d 811, 816 (Mo. banc 2017) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 206 (Mo. banc 2014)).  Likewise, "[w]hen applying *de novo* review in determining how the law applies to the facts of a case, we defer to the fact-finder's assessment of the facts."  *Int. of Z.R.L.C.*, 700 S.W.3d 539, 541 (Mo.App. S.D. 2024)  We have summarized the facts of these cases accordingly.

[4] We reference A.R.K. in the caption and facts of this appeal only because the Children came into care together and both Children were included on the same termination petition and judgment terminating parental rights.  Genetic testing conclusively established that Father is not A.R.K.'s parent.

2

started programs or services like drug treatment and counseling, but he was discharged due to absenteeism prior to successful completion. He made progress in the cleanliness and safety of his home, but then he regressed and all progress was lost. In the months leading up to the termination trial, Father did not maintain contact with Child's caseworker and Father's whereabouts were unknown. He was maintaining a low profile due to an outstanding warrant for his arrest. In short, he had not rectified the circumstances that brought Child into foster care.

Father's visits with Child were sporadic. Father was in arrears on child support, provided no financial support, and provided some food, drinks, and diapers that met Child's needs only for the short duration of Father's sporadic visits. Father's infrequent visits, coupled with his refusal to complete services to get Child returned to Father's care, was harming Child emotionally.

A petition and amended petition for termination of parental rights were filed. Trial was scheduled then continued at Father's request. Father was not present but was represented by counsel when the amended termination petition was tried. The trial court terminated Father's parental rights on the grounds of § 211.447.5(2)[5] abuse and/or neglect, § 211.447.5(3) failure to rectify, and § 211.447.5(5) parental unfitness, along with a § 211.447.7 finding that termination of parental rights was in Child's best interest.

Father filed a timely notice of appeal *pro se*. Because he had been found to be indigent and no filings were made on his behalf by an attorney, we remanded the issue of Father's representation to the trial court for consideration. On remand, the court appointed appellate counsel for Father.

While that appeal was pending, Father's newly-appointed counsel moved for relief from the termination judgment pursuant to Rule 74.06(b). Despite a similarity of issues, the Rule

---

[5] Unless otherwise indicated, statutory references are to RSMo. (Cum.Supp. 2021).

3

74.06(b) proceedings constituted an independent action culminating in its own judgment. *Int. of M.M.B.*, 676 S.W.3d 504, 506 (Mo.App. S.D. 2023). The trial court entered a judgment denying the motion, finding that Father did not satisfy his burden to obtain relief under Rule 74.06(b). Father's attorney timely filed a notice of appeal, which we consolidated with the pending appeal from the March termination judgment.

## Procedural Error Claims (Points I, II, and VII)

Father first contends that the trial court misapplied the law because the social summary mandated by § 211.455.3 RSMo. (2016) was not made available to him prior to trial and that the court proceeded to trial despite noncompliance with this statute.[6] These arguments were not raised prior to or at trial and thus have not been preserved for appeal. *In re Adoption of C.M.*, 414 S.W.3d 622, 671 (Mo.App. S.D. 2013). A party claiming to be aggrieved by noncompliance with a statute must timely raise the error. *Id.*

Even if these claims had been preserved, the record bears no indication of noncompliance with § 211.455.3 RSMo. (2016). The original petition for termination of parental rights was filed in July of 2022. Counsel was appointed for Father. On August 16, 2022, the trial court ordered the Children's Division to complete a social study. Pursuant to that order, a social study was completed and counsel for the Children's Division filed it with the court on October 25, 2023. A certificate of service via electronic filing accompanied the social study.[7] Without objection, the

---

[6] None of the points relied on in this consolidated appeal reference Rule 74.06(b) or trial court error in the denial of relief under that rule. "We do not consider an argument not preserved in the Point Relied On." *In re S.H.P.*, 638 S.W.3d 524, 531 n.7 (Mo.App. W.D. 2021) (quoting *Frazier v. City of Kan. City*, 467 S.W.3d 327, 340 (Mo.App. W.D. 2015)). Accordingly, we have reviewed only the claims raised in the points relied on and not other claims raised exclusively in the argument sections of each point.

[7] As the appellant, the onus was on Father to compile the record on appeal for determination of the questions presented. *Int. of K.K.S.S.*, 689 S.W.3d 252, 256-57 (Mo.App. W.D. 2024) (citing Rule 81.12). Availability and service of the social study are issues crucial to Father's argument on these

4

social study and related certificate of service were judicially noticed at trial on December 22, 2023. Points I and II are denied.

We now advance to Father's seventh point, which is also a claim of procedural error. Father contends the trial court erred in denying his attorney's request to continue the termination trial. In an oral motion made the day of trial, Father's attorney represented that Father was not present because he had been arrested and was being held in another county's jail.

We review for abuse of discretion. ***K.K.S.S.***, 689 S.W.3d at 258. We "'will find an abuse of discretion in denying a motion for a continuance only in extreme cases where it clearly appears that the moving party is free of any dereliction.'" ***Id.*** (quoting ***In re P.D.***, 144 S.W.3d 907, 911 (Mo.App. E.D. 2004).

> A party has no constitutional or statutory right to appear in person at a civil trial. It is well settled that a prisoner is not entitled to perfect access to the courts; an incarcerated person is entitled to meaningful access. This right of access is satisfied by the presence of sufficient alternatives to a personal appearance when the prisoner makes a timely request.

***S.L.C. v. M.M.***, 641 S.W.3d 406, 411 n.7 (Mo.App. W.D. 2022) (internal punctuation and citations omitted).

"Rule 65.03 requires a motion for continuance to be made in writing accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents that the application for continuance may be made orally." ***Int. of T.M.L.***, 615 S.W.3d 100, 102 (Mo.App. E.D. 2020) (internal footnote and punctuation omitted). A court does not abuse its discretion in denying a motion for continuance that does not comply with Rule 65.03. ***Id.*** In this case, Father's attorney made an oral motion for

---

points, yet the certificate of service for the social study was not filed with this court for review. Consequently, we must take the intendment and content of that record as favorable to the court's ruling and unfavorable to Father. ***In re C.A.M.***, 282 S.W.3d 398, 401 (Mo.App. S.D. 2009).

continuance that did not comply with Rule 65.03 (2023). This noncompliance alone justified denial of the motion.

Regardless of procedural noncompliance, Father's absence did not deny him meaningful access to the court, and it cannot be said that he is free of any dereliction. The termination trial was continued previously at Father's request so he could meet with his attorney to sign a written consent to the termination of his parental rights. After the trial was continued, Father did not maintain contact with his attorney, who became aware of Father's whereabouts only when he was arrested on a long-outstanding warrant a few days prior to the rescheduled termination trial. The trial court observed, without objection or challenge, that Father had not personally appeared in court for any of the prior hearings in the neglect or termination cases. Nonetheless, Father was well-represented by trial counsel, whom the trial court found "participated zealously on [Father's] behalf in his absence." Point VII is denied.

### Termination Grounds (Points III, IV, and V)

For ease of analysis, we next consider Father's fifth point, which challenges the trial court's finding of § 211.447.5(5) parental unfitness as against the weight of the evidence. Father does not deny that Child was in foster care for at least 15 of the 22 months prior to the filing of the amended termination petition or that this circumstance gave rise to a rebuttable presumption of parental unfitness under § 211.447.5(5)(b)(e). *See* ***Z.R.L.C.***, 700 S.W.3d at 542-43 (time-in-care gives rise to a rebuttable presumption of parental unfitness). Father claims he carried his burden to rebut this presumption. We disagree.

"[A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." ***J.A.R.***, 426 S.W.3d at 630. "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of

6

power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *S.S.S.*, 529 S.W.3d at 816 (quoting *Ivie*, 439 S.W.3d at 206). This is especially true when, as here, the party who bore the burden of proof did not prevail. *Int. of A.M.R.*, 673 S.W.3d 864, 874 (Mo.App. W.D. 2023).

To succeed on such a claim, Father must engage in the following four-step analysis:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all the favorable evidence in the record supporting the existence of that proposition;

(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and

(4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*A.M.R.*, 673 S.W.3d at 874. Father satisfied the first step and made some attempt to satisfy the second step, but has wholly failed to satisfy the third and fourth steps. As previously stated, we must resolve "all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit." *Id.* Doing so results in the factual basis summarized above, which falls far short of inducing belief that Father rebutted the presumption of his parental unfitness. Point V is denied.

Father's third and fourth points challenge the alternative grounds for termination of his parental rights also found by the trial court. Our resolution of point five moots these claims of error because the judgment may be affirmed based upon a sole statutory ground for termination. *Z.R.L.C.*, 700 S.W.3d at 543. Accordingly, Points III and IV are denied as moot.

7

**Best Interest (Point VI)**

In Father's sixth claim of error, he asserts that the trial court abused its discretion in finding that termination was in the Children's best interest.

"The determination of a child's best interest is a subjective assessment based on the totality of the circumstances." *Id.* We will reverse only if the trial court abused its discretion. *Id.* at 544.

Child's guardian ad litem recommended termination of parental rights as being in Child's best interest. The trial court considered and made findings on the seven factors listed in § 211.447.7. Six of the seven factors weighed in favor of termination. Only one such factor is necessary to support a best interest finding. *See Z.R.L.C.*, 700 S.W.3d at 544 (no requirement that all seven factors found adversely to parent for termination and no minimum number of negative factors required). Thus, we will discuss only three of the factors.

The trial court found Father's visits were inconsistent and that he failed to provide even minimal support for the cost of Child's care and maintenance while he was in foster care. Child's caseworkers testified that Father provided no financial support, that he was delinquent in providing child support, and that he provided food, drinks, and diapers that met Child's needs only for the short duration of Father's sporadic visits. As was its prerogative, the trial court attached little or no weight to Father's infrequent visits, communications, and contributions. Section 211.447.8.

The trial court also found that additional services were not likely to bring about a lasting parental adjustment that would enable a return of Child within an ascertainable period of time. Child's caseworkers testified that the Children's Division had offered services to Father for nearly six years, yet he was no closer to addressing the ongoing issues that brought Child into and kept Child in foster care. Father minimizes this testimony and instead blames the Children's Division for his failure to make progress. Even if the Children's Division failed to offer services, which the

8

trial court did not find and we do not find, "'the absence of treatment or services is no defense to a termination proceeding.'" ***S.L.C. v. M.A.C.***, 675 S.W.3d 758, 764 (Mo.App. S.D. 2023) (quoting ***Matter of M.M.***, 973 S.W.2d 165, 170 (Mo.App. S.D. 1988)). "When a parent refuses 'to cooperate with and fail[s] to progress in services offered, the court may find that additional services would be useless.'" ***Id.*** at 765 (alteration in original) (quoting ***In re R.A.***, 913 S.W.2d 142, 146 (Mo. App. W.D. 1996)).

The trial court did not abuse its discretion in finding termination of Father's parental rights to be in Child's best interest. Point VI is denied.

## Conclusion

We affirm the judgment terminating parental rights and the judgment denying Rule 74.06(b) relief from the termination judgment.

JACK A. L. GOODMAN, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

MATTHEW P. HAMNER, J. - CONCURS